## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT DARREL BATSON,

       Petitioner,

v.                                                   Case No. 3:20-cv-538-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## <u>ORDER</u>

### I.   <u>Status</u>

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1), as supplemented (Docs. 14-1 to 14-29).[1] He challenges a 2018 state court (St. Johns County, Florida) judgment of conviction for possession of a firearm by a convicted felon. He is serving a 40-year term of imprisonment. Respondents filed a Response (Doc. 9) with exhibits (Docs. 10-1 to 10-4; Resp. Ex.). Petitioner filed an Amended Reply (Doc. 26). This case is ripe for review.[2]

_____

[1] Petitioner filed an "amended petition" (Docs. 14-1 to 14-29), in which he did not change the substance of his claims but simply added citations to the record. <u>See</u> Order (Doc. 19).

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

_____

(11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could

> disagree on the correctness of the state court's decision." <u>Richter</u>, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including

> constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

6

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

7

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

**C. Ineffective Assistance of Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant

> of a fair trial, a trial whose result is reliable." <u>Id.</u> at
> 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).[3]

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." <u>Richter</u>, 562 U.S. at 105. But
> "[e]stablishing that a state court's application of

_____

[3] This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").

> Strickland was unreasonable under § 2254(d) is all the
> more difficult. The standards created by Strickland
> and § 2254(d) are both highly deferential, and when
> the two apply in tandem, review is doubly so." Id.
> (citations and quotation marks omitted). "The
> question is not whether a federal court believes the
> state court's determination under the Strickland
> standard was incorrect but whether that
> determination was unreasonable - a substantially
> higher threshold." Knowles v. Mirzayance, 556 U.S.
> 111, 123 (2009) (quotation marks omitted). If there is
> "any reasonable argument that counsel satisfied
> Strickland's deferential standard," then a federal
> court may not disturb a state-court decision denying
> the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal

citations modified). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are considering whether

to grant federal habeas relief from a state court's decision." Rutherford v.

Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting

Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356,

371 (2010).

## III.   Analysis

In its answer brief filed during Petitioner's direct appeal, the state

provided the following summary of the trial court proceedings:

> Batson was charged by information and
> amended information with one count of possession of
> a firearm by a convicted felon, one count of

aggravated assault and one count of driving while license canceled, suspended or revoked. The offenses were severed for trial purposes. After Batson was convicted on the charge of possession of a firearm by a convicted felon, the State[] nolle prossed the remaining two charge[s].

. . . .

Prior to the start of trial, Batson filed multiple motions to discharge his trial counsel. His trial counsel likewise filed several motions suggesting a conflict of interest.

Batson withdrew his first motion and the trial judge found there was no conflict of interest. During the June 6, 2018, hearing, the trial judge stated that he attempted to conduct a Nelson hearing, but Batson would not discuss what trial counsel was not doing and the trial judge was unable to conduct a full inquiry. A third Nelson hearing was held on August 15, 2018. After hearing from both Batson and his trial counsel, the trial judge ruled that trial counsel was providing effective assistance of counsel and informed Batson he could continue with trial counsel, hire his own lawyer or represent himself. Batson stated he wanted to represent himself. The trial judge conducted a further inquiry and determined that Batson waived his right to counsel.

. . . .

The trial judge informed Batson that he was not going to continue the case and that the jury would be picked on the following Monday. Batson stated "[a]nd how are we going to do that when I haven't had a chance to procure my evidence and witnesses and everything I'm going to need?"

On August 22, 2018, Batson filed a written motion to continue. During the August 23, 2018,

hearing, Batson mentioned the motion to continue. Batson stated that his motion to continue was "pending based on the ability to obtain evidence and witnesses in my behalf."[fn] Batson did not bring the motion up again and did not request that the trial judge rule on the motion. Batson did not renew his motion or request a continuance prior to the start of trial.

fn. The trial judge, after going through each witness and piece of evidence Batson sought to introduce at trial, ruled that the evidence and witnesses were inadmissible.

. . . .

Prior to trial, Batson filed a motion to suppress seeking to suppress the handgun which fell from his pants when he was stopped. Batson also filed a motion to schedule [a] hearing on the motion to suppress. In the motion, Batson requested the trial judge to command the presence of Angel Falaney and Deputy Newman. There is nothing in the record that Batson attempted to have those witnesses subpoenaed for the hearing. Prior to the start of the hearing, Batson stated:

> . . .[W]hen I filed the motion for the request for the hearing on the motion to suppress, I had asked for Angel Flaney (phonetic) to be called as a witness and also Deputy Newman, who gave a deposition, the only one that I was supplied with, to be present during this hearing to testify as to particular information that was given in the 9-1-1 call and facts that he testified to in his deposition and the police report itself, so that's my whole point, cause she's calling Deputy Toth, whose deposition was taken, but I was never supplied

12

> with, so I have no way of properly questioning him as to any particular facts that he may testify to in regards to the stop, you know. I asked for my sister to be called here.

According to Batson, his sister was the one who called 911 and gave his description, i.e., the details of the clothing Batson was wearing. Deputy Newman conducted the stop. According to the prosecutor, Deputy Newman was in training and Deputy Toth was the field training officer.

The trial judge stated that he would consider the 911 call and that he did not need Batson['s] sister to say what was in the 911 call. Batson did not object.

After addressing different issues, Batson stated he did not have a copy of Deputy Toth's deposition. The prosecutor stated she would provide Batson with a copy and in fact gave him a copy of the deposition during the hearing on the motion to suppress. Batson declined the opportunity to go through the deposition stating "it's not gonna make probably a whole lot of difference of my questions."

At the beginning of [the] hearing on the motion to suppress, the trial judge stated "[t]his was a warrantless arrest and warrantless seizure, so the State has the burden to go forward on this." The 911 call was played.

Deputy Toth testified that he was the field training officer and Deputy Newman was driving the patrol vehicle. Deputy Toth heard a call referencing an aggravated assault with a deadly weapon at 7:29 pm. According to the dispatch, the person calling in said Robert Batson pulled a gun and he was a convicted felon. Deputy Toth pulled Batson up in the database, saw his picture and that he lived in Hastings. He then told Deputy Newman to head to

13

State Road 16 because dispatch said Batson was taking Lewis Speedway. About 10-15 minutes later, he observed Batson. Batson was riding a red scooter and matched the BOLO and the description in the 911 call. Batson matched the picture that Deputy Toth had pulled up. A traffic stop was initiated. As Batson got off the scooter, the handgun fell out of his pants.

On cross-examination, Batson questioned Deputy Toth as to why he went the direction that he did. He also questioned him about whether Batson was wearing a black shirt or a multi-colored jacket when he was stopped.

After hearing argument from both parties, the trial judge [denied the motion to suppress].

Resp. Ex. 7 at 7-15 (internal record citations omitted).

## A. Grounds One and Two

In Ground One, Petitioner argues that his appellate counsel was ineffective for failing "to challenge on appeal the trial court's ruling on state's motions in limine categorically excluding all of Petitioner's witness testimony and evidence." Doc. 1 at 10 (capitalization and emphasis omitted). In Ground Two, he contends that his appellate counsel was ineffective for failing "to challenge trial counsel's ineffectiveness that was apparent from the face of the record, where trial counsel failed to pursue a motion to suppress illegally seized evidence (the gun) used to prosecute the Petitioner." Id. at 20 (capitalization and emphasis omitted).

14

Respondents assert that because Petitioner chose to represent himself at trial and on appeal, he cannot challenge the effectiveness of counsel. Doc. 9 at 9-10. Indeed, they argue that "when a defendant waives his right to the assistance of counsel, whether it is trial or appellate counsel, the defendant waives his right to raise a <u>Strickland</u> claim." <u>Id.</u> at 10.

Petitioner raised these claims in a pro se petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Resp. Ex. 11. The Fifth District Court of Appeal denied the petition. Resp. Ex. 12 ("[T]he Petition for Ineffective Assistance of Counsel, filed March 17, 2020, is denied.").

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Grounds One and Two are due to be denied.

Even assuming the state court's decision is not entitled to deference, these claims have no merit. On direct appeal, Petitioner was initially represented by counsel, and counsel filed an initial brief arguing that the trial court erred by denying Petitioner's request for a continuance and Petitioner was precluded from presenting his necessity defense. <u>See</u> <u>Batson v. State of Florida</u>, No. 5D18-

2971 (Fla. 5th DCA Mar. 11, 2019); see also Resp. Ex. 11 (brief marked as exhibit A attached to Petitioner's pro se petition alleging ineffective assistance of appellate counsel). Thereafter, Petitioner filed a pro se motion to discharge counsel, in which he listed claims that appellate counsel refused to raise, and he requested leave to file an initial brief. Resp. Ex. 4. The Fifth DCA treated Petitioner's pro se motion "as a motion to discharge counsel without cause" and granted his request. Resp. Ex. 5. The Fifth DCA also struck Petitioner's counseled brief and directed him to file an initial brief within 30 days. Id. Petitioner filed a pro se brief, which included a claim that the trial court erred by granting the state's motions in limine precluding presentation of Petitioner's evidence and witnesses. Resp. Ex. 6. The state filed an answer brief, Resp. Ex. 7, and Petitioner filed a pro se reply, Resp. Ex. 8. The Fifth DCA per curiam affirmed Petitioner's conviction and sentence without issuing a written opinion. Resp. Ex. 9.

Petitioner cannot claim that his appellate counsel was ineffective when he chose to proceed pro se on appeal. See Faretta v. California, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel."); see also United States v. Roggio, 863 F.2d 41, 43 (11th Cir. 1989) ("The appellant clearly had a right to represent himself, but in exercising that right he cannot now complain that he received ineffective

assistance of counsel at trial."). Petitioner argues in his Amended Reply that his decision to proceed pro se on direct appeal "was not based on self desire or personal preference, but was directly premised upon claims of Ineffective Assistance of Appellate Counsel that forced him into a pro se status to have his Constitutional Claims heard when Appellate Counsel failed to raise them in his brief." Doc. 26 at 3. Petitioner, however, filed a pro se brief, in which he raised, inter alia, a trial court error claim regarding the state's motions in limine (related to Ground One of the instant Petition). Thus, he raised one of the claims he asserts appellate counsel was ineffective for failing to raise and the Fifth DCA adjudicated his claim; thus, Petitioner suffered no prejudice from appellate counsel's alleged failure to raise the same claim. As to his other claim (related to Ground Two of the instant Petition), ineffective assistance of trial counsel claims are generally not raised on direct appeal; instead, they are raised in post-conviction proceedings.[4] Although Petitioner was not precluded from including such claim in his pro se initial brief, he did not do so. Regardless, the

---

[4] Petitioner's appellate counsel advised him that claims of ineffective assistance of trial counsel are generally raised in a postconviction motion under Florida Rule of Criminal Procedure 3.850. See Resp. Ex. 11 (letter attached as exhibit C). The trial court's docket does not reflect that Petitioner ever filed a Rule 3.850 motion. See State of Florida v. Batson, No. CF17-1599 (Fla. 7th Cir. Ct.); see also McDowell Bey v. Vega, 588 F. App'x 923, 927 (11th Cir. 2014) (holding that district court did not err in taking judicial notice of the plaintiff's state court docket when dismissing § 1983 action); Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

underlying claim – ineffective assistance of trial counsel for failing to file a motion to suppress the firearm – is meritless, and appellate counsel cannot be ineffective for failing to raise a meritless issue. Before his trial, Petitioner filed a pro se motion to suppress the firearm, and the trial court denied the motion after conducting an evidentiary hearing.[5] Even assuming appellate counsel should have raised this claim on direct appeal, Petitioner suffered no prejudice. As such, Grounds One and Two are denied.

### B. Ground Three

According to Petitioner, the "trial court deprived [him] of his Fourteenth Amendment rights to due process of law in his suppression hearing by acquiescing to the State's discovery violation and depriving Petitioner of his evidence and witnesses in support of his motion to suppress evidence and by applying the wrong standard of test as to who has the burden of proof in such [a] proceeding." Doc. 1 at 28 (some capitalization and emphasis omitted). He complains that the trial court denied his request to have two witnesses (Petitioner's sister and Deputy Newman) testify at the suppression hearing and he did not receive a copy of Deputy Toth's deposition. Id. at 28-32.

---

[5] Appellate counsel's letter to Petitioner mentioned that the record on appeal did not contain a pro se motion to suppress or transcript of an evidentiary hearing, but counsel was mistaken. The transcript was part of the record on direct appeal and the parties cited to it in their briefs.

Respondents argue that this claim is procedurally defaulted, as Petitioner failed to object during the trial court proceeding and he "made none of the arguments he makes now and that he made on direct appeal." Doc. 9 at 8. Alternatively, Respondents contend the state court's adjudication of this claim is entitled to deference. Id. at 14-21.

Before trial, Petitioner filed a pro se motion to suppress the firearm. The trial court conducted a hearing on several then-pending motions, including Petitioner's motion to suppress. Before addressing the motion to suppress, Petitioner advised the trial court that he filed a request to have two witnesses (his sister and Deputy Newman) present to testify at the suppression hearing. See Resp. Ex. 1 at 1180-81. After considering Petitioner's reasons for requesting the testimony of these two witnesses, the trial judge stated: "We don't need your sister to say what's on the 9-1-1 call, because the 9-1-1 call itself says what's on the 9-1-1 call under the Best Evidence Rule." Id. at 1183. As to Deputy Newman, the state explained that "Deputy Toth was the field training officer directing Deputy Newman where to go, which is why we're going to call Deputy Toth." Id. at 1182.

At the beginning of the suppression hearing, the trial judge recognized that "the State has the burden to go forward on this." Id. at 1197. The state played the 911 call that Petitioner's sister made, in which she identified Petitioner, by name and description, as the suspect. See id. at 1197-98, 1202.

19

The state also called Deputy Toth, one of the officers who initiated the traffic stop, and Petitioner cross-examined him. See id. at 1198-1225. During his cross-examination, Petitioner commented that he had never seen Deputy Toth's deposition transcript. Id. at 1205. The trial judge interjected and asked Petitioner whether he "want[ed] to take a minute" to review it. Id. The state then provided Petitioner a copy of the deposition transcript, and the trial court again asked Petitioner whether he wanted time to review it prior to continuing. Id. Petitioner declined stating, "Well, it's not gonna make probably a whole lot of difference of my questions." Id.

At the conclusion of the hearing, the trial judge denied the motion, finding as follows:

> Okay. There clearly was reasonable suspicion to justify the stop. There was reasonable, articulate, well-founded suspicion based upon the facts that were set forth.
>
> There was an identified caller, not an anonymous caller, but an identified caller, who reported an aggravated assault to the sheriff's office. The call was put out on the southwest district radio first.
>
> The officer, in addition to the BOLO that went out, not only had the BOLO, it's much more than we typically see, went and ran the defendant's name through the computer system, so had a picture of the defendant on his computer, and then as they're driving down State Road 16, they see a unique vehicle, that being a scooter, red and black in color, that meets the description, a white male, meets the

age, meets the haircut description, met all descriptions. There may have been a little discrepancy with regards to clothing, but a slight discrepancy doesn't negate the reasonable suspicion.

Once they justifiably and lawfully stopped the vehicle, that being the scooter, the defendant stepped off the scooter and the gun dropped out of his person or dropped off of his person, so there was no search, there wasn't even a protective pat-down that would have been justified under those circumstances, but that didn't even take place, so I'm gonna deny the motion to suppress the firearm.

Id. at 1230-31.

On direct appeal, Petitioner raised a similar claim in his pro se brief. See Resp. Ex. 6. The state argued that Petitioner's "arguments have not been preserved for appellate review, as they were not made [in the trial court proceeding]." Resp. Ex. 7 at 34.  The state further argued that the trial court properly denied the motion to suppress. Id. Petitioner filed a pro se reply brief. Resp. Ex. 8. The Fifth DCA per curiam affirmed Petitioner's conviction and sentence without issuing a written opinion. Resp. Ex. 9.

Insofar as Petitioner is raising a Fourth Amendment claim, the Court finds that Stone v. Powell, 428 U.S. 465 (1976), bars such claim on federal habeas review.

Stone instructs that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search

> or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.
>
> For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.

Mincey v. Head, 206 F.3d 1106, 1125-26 (11th Cir. 2000) (internal quotations, citations, and footnote omitted; formatting modified). Here, Petitioner was afforded full and fair litigation of his suppression claim. The trial court addressed each witness and evidence that Petitioner sought to present and explained its reasoning for denying Petitioner's motion. Petitioner also presented his claim to the Fifth DCA, which affirmed his conviction and sentence. Thus, Stone bars federal habeas review.

To the extent Stone does not bar Petitioner's claim and the Fifth DCA adjudicated the claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination

of the facts in light of the evidence presented. Therefore, Ground Three is due to be denied.

In light of the foregoing, it is

**ORDERED**:

1.     The Petition (Doc. 1), as supplemented (Doc. 14), is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     Petitioner's Motion to Appoint Magistrate Judge (Doc. 34) is **DENIED as moot**.

3.     Petitioner's Motion for Leave to Expand Record (Doc. 35) is **DENIED**.

4.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

5.   The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of September, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 9/15
c:
Robert Darrel Batson, #708431
Counsel of Record